54 CCPA

**Application of Herman HOEKSEMA.**
**Patent Appeal No. 7778.**

United States Court of Customs
and Patent Appeals.
June 29, 1967.

Earl C. Spaeth, Kalamazoo, Mich.
(Eugene O. Retter, George T. Johanne-
sen, Kalamazoo, Mich., of counsel), for
appellant.

Joseph Schimmel, Washington, D. C.
(Jack E. Armore, Washington, D. C., of

counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH and ALMOND, Judges, and WILLIAM H. KIRKPATRICK.[*]

KIRKPATRICK, Judge.

This appeal is from a decision of the Board of Appeals affirming the examiner's rejection of claim 1 in appellant's application serial No. 30,770, filed May 23, 1960, for "9-D-Psicofuranosylpurine and 6-Substituted Derivatives." Claims 2 and 11–25 were allowed.

The subject matter is best illustrated by the appealed claim which reads: [1]

1. An N-psicofuranoside having the formula:

wherein A is selected from the class consisting of hydrogen, the group -XR wherein R is selected from the class consisting of hydrogen, lower-alkyl, and lower-aralkyl, and X is selected from the class consisting of oxygen and sulfur, and the group $-N\begin{smallmatrix}R_2\\R_3\end{smallmatrix}$ wherein $R_2$ is selected from the class consisting of hydrogen, lower-alkyl, lower-aralkyl, and lower-aryl, and $R_3$ is selected from the class consisting of lower-alkyl, lower-aralkyl, and lower-aryl, and R' is selected from the class consisting of hydrogen, a hydrocarbon carboxylic acid acyl radical containing from two to twelve carbon atoms, inclusive, and a halo-, hydroxy-, lower-alkoxy-, amino-, cyano-, thiocyano-, and nitro-substituted hydrocarbon carboxylic acid acyl radical containing from two to twelve carbon atoms, inclusive.

The compounds embraced in the appealed claim are derivatives of a purine having a D-psicofuranosyl group attached to the 9-position of the purine. The controversy here is limited to the substituent A at the 6-position of the purine ring system. As the appealed claim states, A may represent the group $-NR_2R_3$ wherein $R_2$ may be a hydrogen, lower alkyl, lower aralkyl or lower aryl, and $R_3$ may be lower alkyl, lower aralkyl and lower aryl. Thus, the substituent A may be a secondary or tertiary amino group but it may not be a primary or unsubstituted amino group. The allowed claims all relate to products and processes where A is not an amino group.

The reference relied on is: [2] De Boer et al. 3,094,460 June 18, 1963 (filed January 20, 1959)

In the disclosure of De Boer et al., there is disclosed a new antibiotic material called psicofuranine which has the following structural formula:

[*] Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

[1] The numbering of the 9H-purine ring system is added to the structural formula in the claim to facilitate subsequent discussions. In this regard, we have been aided by appellant's excellent brief and oral argument.

[2] The examiner cited a Baker et al. article to show the state of the art. However, the board states that neither it nor the examiner relied on the Baker et al. reference to support the rejection. Therefore, we need not consider the Baker et al. article as a reference.

It is clear that the appealed claim is readable on psicofuranine except for the substituent on the number 6-carbon in the purine ring system: Psicofuranine has a primary amino group whereas the claimed N-psicofuranoside has a substituted amino group at that position.

Recognizing the close resemblance of the reference compound to a compound within the scope of the appealed claim, appellant argued that his 6-lower-alkyl-amino -9 - D - psicofuranosylpurine and 6 - di - lower-alkylamino - 9 - D -psicofur-anosylpurine encompassed by the appealed claim are not obvious to one of ordinary skill in the art because De Boer et al. do not teach a method for producing appellant's compounds and because there is no known or obvious method for producing them. Appellant contended that one of ordinary skill in the art would not know how to produce the claimed compounds with the disclosure of the De Boer et al. patent and, therefore, that that patent does not place appellant's compounds in the possession of the public. In re Brown, 329 F.2d 1006, 51 CCPA 1254. In addition, appellant submitted an affidavit by one Dr. Paul F. Wiley who stated: that he does not believe the fermentation process disclosed in De Boer et al. could be adapted to the production of the instant claimed compounds; that the 6-amino-9-D-psicofur-anosylpurine of De Boer et al. could not be transformed by direct chemical substitution of the 6-amino group to the presently claimed compounds; and that such transformations could be carried out only by a complex multi-step procedure such as that described in the application on appeal.

The examiner rejected the appealed claim as being obvious in view of the disclosure of De Boer et al. under 35 U.S.C. § 103. It was the examiner's position that the psicofuranine of De Boer et al. is the next lower homolog of a specific compound within the scope of the appealed claim: namely, where A is -NH-lower alkyl. The examiner further was of the opinion that appellant's claimed 6-lower-alkylamino compound is so closely related to the 6-amino homolog of De Boer et al. as to be obvious to a chemist of ordinary skill and thus prima facie unpatentable thereover. With respect to the Wiley affidavit, the examiner commented that it is directed to the *processes* for preparing various compounds and it shows nothing unobvious for the claimed *compounds*. The examiner also gave little weight to the affidavit since it is not supported by experimental data.

The board affirmed the decision of the examiner. Noting that the appellant's position is that the reference is not an enabling disclosure and recognizing this court's comment in In re Riden, 318 F. 2d 761, 50 CCPA 1411, that "the method of making the compounds is a relevant fact to be considered in the question of obviousness of the compounds," the board stated that in its opinion the method of making the compound should never be the overriding factor in determining the question of obviousness of the compound. The board further pointed to the fact that although appellant stated that his complex multi-step process is necessary to introduce the alkylamino substituent, he has not asserted it is the *only* method. Continuing, the board stated:

We believe any chemist of average competence would recognize that in a compound having several reactive groups, such as here involved, the direct approach is seldom feasible but that blocking of the various reactive groups ultimately to be retained is first necessary. This was also pointed out to appellant's counsel at the oral hearing with specific reference to the practice in the synthesis of steroids. Therefore here, as in Riden et al. supra, there is no basis for definitely concluding that a chemist could not, within his skill, produce the compound in controversy.

Under the circumstances and on the basis of the record before us, we do not believe appellant should prevail solely on the asserted difficulty of making the claimed compounds or the fact that he has been allowed process claims

for *one* method to that end.[3] [Emphasis and footnote ours.]

Before this court, appellant admits that his 6-lower-alkylamino compounds would not be patentable if an operable method for making them would have been obvious at the time the invention was made to one of ordinary skill in this art. Appellant has not submitted any showing of unexpected properties possessed by his compounds but he predicates patentability solely on the alleged unobviousness of the process for making the claimed compounds. As to this process, appellant notes that his "complex multi-step procedure," for transforming the 6-amino-9-D-psicofuranosylpurine of De Boer et al., differs from allowed process claim 23 only in that claim 23 does not recite the last step in said procedure. By implication, appellant argues, the procedure for preparing the alkylamino compounds, reciting an additional reaction step or a further limitation, is also patentable. Appellant's position is then:

Appellant does not insist his multi-step processes are unique for the production of his 6-lower-alkylamino compounds. Rather, his position is that any method useful to make his compounds is likely to be of equal complexity, unobvious, and not within the ordinary skill of a chemist.

\* \* \* \* \* \*

The Patent Office would have appellant show that *all* possible methods are unobvious or that *no* method is obvious. It would seem far more appropriate, and in accord with 35 U.S.C. 132, that the Patent Office be charged in this and similar cases with the burden of providing evidence relating to processes when, as here, an applicant has shown by uncontroverted evidence that the only reference cited by the Patent Office does not teach one of ordinary skill in this art how to make the compounds in question.

The facts in this case are closely analogous to those of In re Riden, supra. In the *Riden* case, the applicants also predicated patentability on a contention that the reference method could not produce the sulfones there claimed. This court there stated:

As to the method of making the compounds claimed being different from Boehme et al., we agree with appellants that this fact is relevant. Chemical cases should not be decided solely on the basis of homology or analogy in structural formulae. The determination of obviousness is not the mechanistic overlaying of chemical formulae to observe whether a difference greater than a methylene group or a chlorine atom exists. \* \* \* *The record does not show whether there are other methods, besides appellants', for making the compounds. It has never been asserted that the method used by appellants is the only method possible for producing the compounds.* Accordingly, we are of the opinion that the difference in making the analogous compounds, though relevant, is entitled to little weight in the consideration of the obviousness of the compounds in question. [Emphasis added.]

We find the above language applicable to the present case.

Appellant's reliance on the *Brown* case is unwarranted. In *Brown,* the invention related to a composition containing a homopolymer of a perfluoroalkyl siloxane and the reference relied on disclosed a composition containing copolymers of a perfluoroalkyl siloxane. We reversed the board's decision in that case because the reference itself stated that "Attempts to prepare fluorine-containing silicone homopolymers have been unsuccessful" thus showing Brown's homopolymers to be not in the possession of the public. There is no comparable showing in the present case. At most, appellant has only demonstrated that *one* method, not here

3. The solicitor's brief stated this point in another way:

It is evident that a particular process for making an unpatenable product may be patentable but that other obvious procedures may also be available and apparent to those skilled in the art.

claimed, for making his compound *may* be unobvious and patentable.

A chemical formula is more than just a picture. It conveys to the skilled chemist a great deal about the nature of the compound and how it will react. Given the picture (formula) for one compound, a chemist looking at the formula for another compound which differs so slightly that it is called a homolog generally expects the second compound to have properties similar to the first one. It is settled that if the second closely related compound possesses unexpected advantageous properties, it may well be regarded as unobvious and patentable. In re Papesch, 315 F.2d 381, 50 CCPA 1084.

In the present case, the Patent Office proceeds upon the proposition that, given a formula and method for producing one compound, a skilled chemist would know how to produce its homolog unless there is something in the record to demonstrate that he would expect some difficulty in doing so. We cannot say that this assessment of the capability of a person skilled in the art is erroneous.

There is nothing, other than the affidavit, in the record to indicate that a chemist would experience difficulty in this regard. In effect, the affidavit selects two methods for making the modification, denies that they will work, and avers that any method that will work will be complex. The affiant does not say that he knows of no other method nor that he believes the ordinary man skilled in the art would not know of any method. Such a pregnant denial is insufficient to place on the record any indication that the required modification of the prior art compound would not be, to one skilled in the art, as obvious as the compound.

Appellant's allegation that "any method useful to make his compounds is likely to be of equal complexity, unobvious, and not within the ordinary skill of a chemist" is unpersuasive of error in the decision below. In the first place, patentability of the claimed compounds is not determined by the complexity of the method for making them, although complexity may be a factor in determining the obviousness of the method. Secondly, whether other methods for making the claimed compounds are or are not obvious should be shown by evidence, and statements by counsel in the brief as to unobviousness are given relatively little weight. See, In re Cole, 326 F.2d 769, 51 CCPA 919.

Finally, appellant's contention that it would be more appropriate to charge the Patent Office with the burden of providing evidence relating to the obviousness of processes for making the claimed compounds is without basis. In the present case, the examiner has cited a reference showing a compound which admittedly makes the claimed compounds prima facie obvious and it is now up to the appellant to rebut that prima facie case by showing the unobviousness of his compounds. This he has failed to do.

The decision is affirmed.

Affirmed.

WORLEY C. J., and SMITH, J., concur in the result.